UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ELIOT FLORES #811654,

    Plaintiff,

v.

CORIZON HEALTH, INC., et al.,

    Defendants.

_____/

Hon. Janet T. Neff

Case No. 1:18-cv-540

## REPORT AND RECOMMENDATION

This matter is before the Court on Defendants' Motion for Summary Judgment. (ECF No. 25). Pursuant to 28 U.S.C. § 636(b)(1)(B), the undersigned recommends that Defendants' motion be **granted** and this matter **terminated**.

## BACKGROUND

The following allegations are contained in Plaintiff's complaint. (ECF No. 1). As of July 6, 2015, Plaintiff was incarcerated at the Carson City Correctional Facility. On this date, Plaintiff injured his left knee playing basketball. A subsequent examination by a nurse revealed that Plaintiff's knee "was fine. . .just a bruise; probably strained." Plaintiff was provided Motrin and an ace bandage as well as a detail for an ice bag and crutches.

Approximately one week later, Plaintiff was examined by a physician's assistant who likewise concluded that Plaintiff's knee was not seriously injured. The physician's assistant nevertheless ordered x-rays of Plaintiff's left knee, the results of which were "negative." In light of

-1-

these results, Plaintiff's detail for an ice bag and crutches was discontinued. Plaintiff requested that an MRI be performed on his knee, but the physician's assistant denied this request. Plaintiff was, however, subsequently prescribed physical therapy which began on October 8, 2015.

Plaintiff asked the physical therapist if a meniscus injury could be observed on an x-ray. The therapist informed Plaintiff that such an injury could be discovered only by an MRI examination. After completing physical therapy, Plaintiff again requested that he undergo an MRI of his left knee, but this request was denied. Plaintiff continued to submit kites requesting medical care because he was experiencing "persistent pain [and] swelling" in his left knee.

On February 16, 2016, Plaintiff was transferred to the Ionia Correctional Facility (ICF). After arriving at ICF, Plaintiff began requesting treatment for the "pain and severe swelling" he was experiencing in his left knee. Plaintiff was provided Motrin which did not relieve his pain. On unspecified dates, Dr. Roger Gerlach treated Plaintiff by draining fluid from his knee and providing him with a Cortisone injection. This treatment did not, however, relieve Plaintiff's pain. On an unspecified date, Dr. Gerlach prescribed Naproxyn for Plaintiff, but this likewise provided no relief. When Plaintiff complained that this medication was not providing him relief, Dr. Gerlach responded that "this is all he is allowed to do for the plaintiff."

On May 7, 2017, x-rays of Plaintiff's left knee revealed arthritis as well as "an injury in or around the meniscus." In light of these x-ray results, Dr. Gerlach ordered that Plaintiff undergo an MRI examination of his left knee which revealed that Plaintiff was suffering a torn meniscus. On June 26, 2017, Plaintiff was examined by a surgeon who subsequently requested that Plaintiff be approved for surgery on his left knee. This request was initially denied, but later approved following an appeal by Dr. Gerlach. On August 16, 2017, Plaintiff underwent knee surgery following which he

was prescribed certain pain medications. However, when Plaintiff returned to prison, Dr Gerlach "immediately changed Plaintiff's pain medication."

Plaintiff initiated this action on May 14, 2018, against Corizon Health, Dr. Gerlach, Dr. Keith Papendick, Prison Health Services, and several other individuals. (ECF No. 1). Many of Plaintiff's claims were dismissed on screening and the complaint was ordered to be served on Defendants Corizon, Gerlach, and Papendick who now move for summary judgment.

## **SUMMARY JUDGMENT STANDARD**

Summary judgment "shall" be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A party moving for summary judgment can satisfy its burden by demonstrating "that the respondent, having had sufficient opportunity for discovery, has no evidence to support an essential element of his or her case." *Minadeo v. ICI Paints*, 398 F.3d 751, 761 (6th Cir. 2005). Once the moving party demonstrates that "there is an absence of evidence to support the nonmoving party's case," the non-moving party "must identify specific facts that can be established by admissible evidence, which demonstrate a genuine issue for trial." *Amini v. Oberlin College*, 440 F.3d 350, 357 (6th Cir. 2006).

While the Court must view the evidence in the light most favorable to the non-moving party, the party opposing the summary judgment motion "must do more than simply show that there is some metaphysical doubt as to the material facts." *Amini*, 440 F.3d at 357. The existence of a mere "scintilla of evidence" in support of the non-moving party's position is insufficient. *Daniels v. Woodside*, 396 F.3d 730, 734-35 (6th Cir. 2005). The non-moving party "may not rest upon [his]

mere allegations," but must instead present "significant probative evidence" establishing that "there is a genuine issue for trial." *Pack v. Damon Corp.*, 434 F.3d 810, 813-14 (6th Cir. 2006).

Moreover, the non-moving party cannot defeat a properly supported motion for summary judgment by "simply arguing that it relies solely or in part upon credibility determinations." *Fogerty v. MGM Group Holdings Corp., Inc.*, 379 F.3d 348, 353 (6th Cir. 2004). Rather, the non-moving party "must be able to point to some facts which may or will entitle him to judgment, or refute the proof of the moving party in some material portion, and. . .may not merely recite the incantation, 'Credibility,' and have a trial on the hope that a jury may disbelieve factually uncontested proof." *Id.* at 353-54. In sum, summary judgment is appropriate "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Daniels*, 396 F.3d at 735.

While a moving party without the burden of proof need only show that the opponent cannot sustain his burden at trial, a moving party with the burden of proof faces a "substantially higher hurdle." *Arnett v. Myers*, 281 F.3d 552, 561 (6th Cir. 2002). Where the moving party has the burden, "his showing must be sufficient for the court to hold that no reasonable trier of fact could find other than for the moving party." *Calderone v. United States*, 799 F.2d 254, 259 (6th Cir. 1986). The Sixth Circuit has emphasized that the party with the burden of proof "must show the record contains evidence satisfying the burden of persuasion and that the evidence is so powerful that no reasonable jury would be free to disbelieve it." *Arnett*, 281 F.3d at 561. Accordingly, summary judgment in favor of the party with the burden of persuasion "is inappropriate when the evidence is susceptible of different interpretations or inferences by the trier of fact." *Hunt v. Cromartie*, 526 U.S. 541, 553 (1999).

## ANALYSIS

**I.        Defendant Papendick**

Because Plaintiff is proceeding as a pauper, his claims are subject to dismissal if such are frivolous, malicious, or fail to state a claim upon which relief can be granted.  *See* 28 U.S.C. § 1915(e)(2) ("the court shall dismiss the case at any time if the court determines that. . .the action or appeal. . .fails to state a claim on which relief may be granted").

To avoid dismissal for failure to state a claim, Plaintiff must allege in his complaint *facts* sufficient to "give the defendant fair notice of what the. . .claim is and the grounds upon which it rests."  *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  Plaintiff must likewise articulate facts sufficient to allege a "plausible claim for relief."  *Ashcroft v. Iqbal*, 556 U.S. 662, 677-78 (2009).  This plausibility standard "is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully."  If the complaint simply pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.'"  *Id.*  As the Court further observed:

> Two working principles underlie our decision in *Twombly*. First, the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice. . .Rule 8 marks a notable and generous departure from the hyper-technical, code-pleading regime of a prior era, but it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions.   Second, only a complaint that states a plausible claim for relief survives a motion to dismiss. . .Determining whether a complaint states a plausible claim for relief will, as the Court of Appeals observed, be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense. But where the wellpleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged - but it has not "show[n]" - "that the pleader is entitled to relief."

*Id.* at 678-79 (internal citations omitted).

Where a plaintiff names an individual as a defendant, but fails to make any factual allegations against that individual, the claim in question is subject to dismissal, even under the liberal construction afforded to *pro se* complaints. *See, e.g., Iqbal*, 556 U.S. at 678; *Frazier v. Michigan*, 41 Fed. Appx. 762, 764 (6th Cir., July 22, 2002) ("a complaint must allege that the defendants were personally involved in the alleged deprivation of federal rights"). While Plaintiff has identified Defendant Papendick as a defendant, he has failed to allege any facts against Papendick that state a valid claim for relief. Because Plaintiff has failed to allege that Defendant Papendick engaged in any active unlawful behavior, the undersigned recommends that Plaintiff's claims against Papendick be dismissed for failure to state a claim on which relief may be granted.

**II.       Defendant Corizon**

Corizon is not vicariously liable for the actions of its employees and, therefore, "may not be sued under § 1983 for an injury inflicted solely by its employees or agents." *Thomas v. City of Chattanooga*, 398 F.3d 426, 429 (6th Cir. 2005) (quoting *Monell v. Dep't of Social Servs.*, 436 U.S. 658, 694 (1978)). To impose liability against Corizon, Plaintiff must demonstrate that he suffered a violation of his federal rights "because of" a Corizon policy or custom. *See Burgess v. Fischer*, 735 F.3d 462, 478 (6th Cir. 2013). Plaintiff can demonstrate the existence of such a policy or custom in one of several ways: (1) prove the existence of an illegal official policy; (2) establish that an official with final decision making authority ratified illegal actions; (3) demonstrate that there existed a policy of inadequate training or supervision; or (4) establish that there existed a custom of tolerance or acquiescence of federal rights violations. *Ibid*. Plaintiff has failed to present evidence that would

satisfy any of these requirements. Accordingly, the undersigned recommends that Corizon is entitled to summary judgment.

### III.     Defendant Gerlach

Plaintiff alleges that Defendant Gerlach violated his Eighth Amendment rights by failing to timely provide him with appropriate medical treatment. The Eighth Amendment's prohibition against cruel and unusual punishment applies not only to punishment imposed by the state, but also to deprivations which occur during imprisonment and are not part of the sentence imposed. *See Farmer v. Brennan*, 511 U.S. 825, 834 (1994); *Estelle v. Gamble*, 429 U.S. 97, 101-02 (1976). Accordingly, the Eighth Amendment protects against the unnecessary and wanton infliction of pain, the existence of which is evidenced by the "deliberate indifference" to an inmate's "serious medical needs." *Estelle*, 429 U.S. at 104-06; *Napier v. Madison County, Kentucky*, 238 F.3d 739, 742 (6th Cir. 2001).

The analysis by which a defendant's conduct is evaluated consists of two-steps. First, the Court must determine, objectively, whether the alleged deprivation was sufficiently serious. A "serious medical need," sufficient to implicate the Eighth Amendment, is "one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Harrison v. Ash*, 539 F.3d 510, 518 (6th Cir. 2008). If the objective test is met, the Court must then determine whether the defendant possessed a sufficiently culpable state of mind:

> a prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of the facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.

*Id.* at 837.

In other words, the plaintiff "must present evidence from which a trier of fact could conclude 'that the official was subjectively aware of the risk' and 'disregard[ed] that risk by failing to take reasonable measures to abate it.'" *Greene v. Bowles*, 361 F.3d 290, 294 (6th Cir. 2004) (citing *Farmer*, 511 U.S. at 829, 847).

To the extent, however, that Plaintiff simply disagrees with the treatment he received, or asserts that he received negligent care, Defendant is entitled to summary judgment. *See Williams v. Mehra*, 186 F.3d 685, 691 (6th Cir. 1999) (citing *Estelle*, 429 U.S. at 105-06) ("[m]edical malpractice does not become a constitutional violation merely because the victim is a prisoner"); *Brown v. Kashyap*, 2000 WL 1679462 at *1 (6th Cir., Nov. 1, 2000) (citing *Estelle*, 429 U.S. at 106) ("allegations of medical malpractice or negligent diagnosis and treatment" do not implicate the Eighth Amendment); *Mingus v. Butler*, 591 F.3d 474, 480 (6th Cir. 2010) (to prevail on an Eighth Amendment denial of medical treatment claim, "the inmate must show more than negligence or the misdiagnosis of an ailment"); *Robbins v. Black*, 351 Fed. Appx. 58, 62 (6th Cir., Nov. 3, 2009) ("mere negligence or malpractice is insufficient to establish an Eighth Amendment violation").

In support of his motion for summary judgment, Defendant Gerlach has submitted his own affidavit, an affidavit executed by Defendant Papendick, and copies of the relevant portions of Plaintiff's medical records. (ECF No. 25-3 at PageID.108-11; ECF No. 25-4 at PageID.112-15; ECF No. 27 at PageID.131-210). This evidence reveals the following.

On July 6, 2015, Plaintiff was examined by a nurse after hurting his left knee playing basketball. (ECF No. 27 at PageID.131-33). The nurse observed "no redness, swelling or deformity" in Plaintiff's left knee. (ECF No. 27 at PageID.132). The nurse was "unable to

accurately assess [Plaintiff's] gait or ROM [range of motion] due to [Plaintiff's] over animated response to visual and tactile exam of [his] left knee." (ECF No. 27 at PageID.132). Plaintiff was provided crutches and a bottom bunk accommodation and given an Ace bandage with instructions to ice his knee three times daily. (ECF No. 27 at PageID.131). X-rays of Plaintiff's left knee, taken on July 13, 2015, were "normal." (ECF No. 27 at PageID.134).

On September 22, 2015, Plaintiff was examined by a Physician's Assistant. (ECF No. 27 at PageID.135-38). Plaintiff reported that his left knee was "worse." (ECF No. 27 at PageID.135). Specifically, Plaintiff reported that he "can run or jog about a lap before his knee starts to hurt bad." (ECF No. 27 at PageID.135). Plaintiff reported that his prescribed pain medication "does not do miracles, but does help to ease the pain a little bit." (ECF No. 27 at PageID.135). The results of an examination of Plaintiff's left knee were unremarkable. (ECF No. 27 at PageID.136). The Physician's Assistant renewed Plaintiff's pain medication prescription and submitted a recommendation that Plaintiff participate in physical therapy. (ECF No. 27 at PageID.136). On September 24, 2015, participated in a physical therapy consult. (ECF No. 27 at PageID.139-40). Plaintiff reported that he runs and jogs and performs range of motion exercises. (ECF No. 27 at PageID.139). Plaintiff was provided with instructions concerning a home exercise program he could perform to address his left knee symptoms. (ECF No. 27 at PageID.140-43).

On February 16, 2016, Plaintiff was first examined by Defendant Gerlach. (ECF No. 25-3 at PageID.109; ECF No. 27 at PageID.144-48). Plaintiff reported that his left knee was "improving as he can do some running now." (ECF No. 27 at PageID.144). The results of an examination of Plaintiff's left knee were "pretty unremarkable – stable." (ECF No. 27 at

PageID.144). Dr. Gerlach continued Plaintiff's pain medication. (ECF No. 25-3 at PageID.109; ECF No. 27 at PageID.144-48).

When Plaintiff was next examined by Defendant Gerlach, on May 11, 2016, the doctor discerned a "significant" change in Plaintiff's left knee. (ECF No. 25-3 at PageID.109; ECF No. 27 at PageID.149). Specifically, the doctor observed swelling and decreased range of motion in Plaintiff's knee. (ECF No. 27 at PageID.149-53). Plaintiff's medication regimen was modified and Plaintiff was scheduled for an arthrocentesis[1] procedure and steroid injection. (ECF No. 25-3 at PageID.109; ECF No. 27 at PageID.149-53). Two days later, Dr. Gerlach performed an arthrocentesis procedure on Plaintiff's left knee. (ECF No. 25-3 at PageID.109; ECF No. 27 at PageID.154). On May 19, 2016, Dr. Gerlach reported that Plaintiff experienced an "excellent response" to this procedure. (ECF No. 25-3 at PageID.109; ECF No. 27 at PageID.155-58). Plaintiff was instructed to discontinue lifting weights, playing sports, or otherwise putting stress on his left knee. (ECF No. 25-3 at PageID.109; ECF No. 27 at PageID.155-58).

On July 5, 2016, Plaintiff reported to Dr. Gerlach that he is able to perform all activities of daily living and "walks in [the] yard" with "not too much pain." (ECF No. 27 at PageID.159-61). An examination revealed "moderate" effusion, but was otherwise unremarkable. (ECF No. 25-3 at PageID.109; ECF No. 27 at PageID.159-61). The doctor concluded that Plaintiff's circumstance was not severe enough to warrant an orthopedic consult. (ECF No. 25-3 at PageID.109; ECF No. 27 at PageID.159-61).

---

[1] Arthrocentesis is a procedure in which fluid is drained from a joint. *See* Arthrocentesis, available at https://www.merriam-webster.com/medical/arthrocentesis (last visited on Jan. 16, 2019).

The results of a September 27, 2016 examination were unremarkable. (ECF No. 25-3 at PageID.109; ECF No. 27 at PageID.162-64). Plaintiff reported that he was continuing to jog and perform squats. (ECF No. 27 at PageID.162). Dr. Gerlach again instructed Plaintiff to stop these activities. (ECF No. 25-3 at PageID.109; ECF No. 27 at PageID.162). Treatment notes dated November 4, 2016, indicate that Plaintiff's "left knee has improved and he can run and do other activities." (ECF No. 27 at PageID.165-67). Plaintiff was again instructed to not perform squats. (ECF No. 27 at PageID.165).

On February 9, 2017, Plaintiff was examined by Dr. Gerlach. (ECF No. 25-3 at PageID.109; ECF No. 27 at PageID.168-72). Plaintiff reported experiencing severe pain, but the doctor reported that this was "unlikely based on aggressive exam eliciting no pain response." (ECF No. 27 at PageID.168). Plaintiff was again instructed to discontinue running or engaging in other rigorous activity. (ECF No. 25-3 at PageID.109; ECF No. 27 at PageID.168-72). Following a March 16, 2017 examination, Dr. Gerlach noted that Plaintiff is "athletic and active" and it is "hard for him to stay away from activities that put adverse and undue strain on his knee." (ECF No. 25-3 at PageID.109; ECF No. 27 at PageID.173-76). The doctor again drained fluid from Plaintiff's knee and provided him with a steroid injection. (ECF No. 25-3 at PageID.109; ECF No. 27 at PageID.173-76).

On March 22, 2017, Plaintiff was examined by Dr. Gerlach. (ECF No. 25-3 at PageID.110; ECF No. 27 at PageID.177-80). The doctor reported that the "effusion [in Plaintiff's knee] has decreased" and Plaintiff's range of motion "has improved to full flex/ext. [flexion and extension]." (ECF No. 25-3 at PageID.110; ECF No. 27 at PageID.177). The doctor advised Plaintiff that he "likely has an internal derangement of [the] meniscus," but that "as long as he avoided

knee intensive activity, he would be okay and that his situation did not call for an orthopedic consultation." (ECF No. 25-3 at PageID.110; ECF No. 27 at PageID.177-80). The doctor nevertheless modified Plaintiff's medication regimen "to see if it would offer [Plaintiff] any relief." (ECF No. 25-3 at PageID.110; ECF No. 27 at PageID.177-80).

On April 11, 2017, Plaintiff reported to Dr. Gerlach that his knee pain was not improved. (ECF No. 25-3 at PageID.110; ECF No. 27 at PageID.181-85). The results of an examination were largely unremarkable. (ECF No. 27 at PageID.181-85). The doctor modified Plaintiff's medication regimen and ordered x-rays of Plaintiff's knee. (ECF No. 25-3 at PageID.110; ECF No. 27 at PageID.181-85). On April 28, 2017, Dr. Gerlach again drained fluid from Plaintiff's knee. (ECF No. 25-3 at PageID.110; ECF No. 27 at PageID.190-93).

On May 3, 2017, Plaintiff was examined by Dr. Gerlach. (ECF No. 25-3 at PageID.110; ECF No. 27 at PageID.194-95). The doctor observed that Plaintiff's knee was not improved and that Plaintiff had also experienced a re-accumulation of fluid on the knee. (ECF No. 25-3 at PageID.110; ECF No. 27 at PageID.194-95). Recently taken x-rays also revealed "early arthritic changes." (ECF No. 25-3 at PageID.110; ECF No. 27 at PageID.194-95). Dr. Gerlach, therefore, requested that Plaintiff participate in an MRI examination of his left knee. (ECF No. 25-3 at PageID.110; ECF No. 27 at PageID.194). The MRI examination revealed that Plaintiff suffered a tear of his meniscus. (ECF No. 25-3 at PageID.110; ECF No. 27 at PageID.199). Plaintiff was subsequently examined by an orthopedic surgeon who recommended that Plaintiff undergo arthroscopic surgery. (ECF No. 25-3 at PageID.110; ECF No. 27 at PageID.200).

On June 27, 2017, Dr. Gerlach requested that Plaintiff be approved for the recommended surgery. (ECF No. 25-3 at PageID.110-11; ECF No. 27 at PageID.200). Dr. Papendick denied this request stating:

> Medical necessity not demonstrated at this time. If [Plaintiff] has not been cooperative with treatment prior to a surgery, how will he rehab after a surgery. Many studies have demonstrated that strengthening of knee extensors and flexors have been shown to have the same outcome at two years as arthroscopic intervention.

(ECF No. 25-3 at PageID.110-11; ECF No. 25-4 at PageID.114; ECF No. 27 at PageID.200).

On July 12, 2017, Dr. Gerlach informed Plaintiff that he would speak with the Regional Medical Director in an attempt to obtain approval for Plaintiff to undergo surgery. (ECF No. 25-3 at PageID.111; ECF No. 27 at PageID.201). The Regional Medical Director agreed with Dr. Gerlach that surgical repair of Plaintiff's left knee was appropriate. (ECF No. 25-3 at PageID.111). On July 31, 2017, Dr. Gerlach again requested that Plaintiff be approved for knee surgery. (ECF No. 25-3 at PageID.111; ECF No. 27 at PageID.204-10). On August 1, 2017, Dr. Papendick, "after reconsidering the medical evidence and noting the Regional Medical Director's position," approved the surgical request. (ECF No. 25-3 at PageID.111; ECF No. 25-4 at PageID.114). Plaintiff underwent knee surgery on August 16, 2017. (ECF No. 25-3 at PageID.111).

This evidence makes clear that Defendant Gerlach did, in fact, provide medical care to Plaintiff. While Plaintiff clearly believes he should have received knee surgery more quickly, the decisions by Dr. Gerlach and others in this regard are not unreasonable in light of the medical record. While Plaintiff may disagree with Dr. Gerlach's treatment decisions or the manner in which he exercised his professional judgment, as noted above, allegations of negligent treatment, misdiagnosis, or medical malpractice do not implicate the Eighth Amendment. Furthermore, to the extent Plaintiff

claims that a delay in treatment violated his rights, he must present medical evidence establishing that he suffered a detrimental effect as a result of the alleged delay in treatment. *See, e.g., Blackmore v. Kalamazoo County*, 390 F.3d 890, 898 (6th Cir. 2004) ("an inmate who complains that delay in medical treatment rose to a constitutional violation must place verifying medical evidence in the record to establish the detrimental effect of the delay in medical treatment to succeed"). Plaintiff has presented no such evidence. Accordingly, the undersigned recommends that Defendant Gerlach is entitled to summary judgment.

## CONCLUSION

For the reasons articulated herein, the undersigned recommends that Defendants' Motion for Summary Judgment, (ECF No. 25), be **granted** and this matter **terminated**. The undersigned further recommends that appeal of this matter would not be taken in good faith. *See McGore v. Wrigglesworth*, 114 F.3d 601, 611 (6th Cir. 1997); 28 U.S.C. § 1915(a)(3).

OBJECTIONS to this Report and Recommendation must be filed with the Clerk of Court within fourteen (14) days of the date of service of this notice. 28 U.S.C. § 636(b)(1)(C). Failure to file objections within the specified time waives the right to appeal the District Court's order. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir.1981).

Respectfully submitted,

Dated: January 24, 2019         /s/ Ellen S. Carmody
ELLEN S. CARMODY
U.S. Magistrate Judge